HENRY M. PEYSER et al., Appellants, v. MATTHEW R. MYERS et al., Respondents.

An incoming partner is not as of course liable for the prior debts or trans-actions of the firm; he can be made liable only by an agreement on his part to assume such liability. His becoming a member of the firm creates no presumption of the existence of such an agreement.

It is not necessary, however, to prove an express agreement; it may be established by evidence of facts and circumstances which justly raise an implication of its existence.

The priority of lien of firm creditors cannot be affected by a transfer by an insolvent firm of assets to one or more of the partners, or by the withdrawal of one partner from the firm or the introduction of a new member.

In an action brought by judgment creditors to set aside an assignment made by the firm of H. H. & Co. for the benefit of creditors as fraudu-lent and void, and to procure the application of moneys paid to certain defendants, in pursuance of a preference therein, to the satisfaction of plaintiffs' judgment, it appeared that prior to February 1, 1882, the then existing firm of H. H. & Co. owed the estate of M. a debt upon which it was paying interest. The firm was then insolvent. On that date a new firm was formed with the same name, one B. becoming a partner. The latter knew of the existence of the debt, but not the amount thereof, and he made no inquiry; he contributed no capital, and the new firm had none except the stock and assets of the old firm, and the business was conducted after he became a member precisely as before. The debt to the estate was credited to the executors on the books of the new firm; they were subsequently credited with interest accruing, charged with goods and money paid, and statements of the account were ren-dered to them. M. testified that his intention, when he went into the firm, was "to take the affairs of the old firm as he found them, and go on with them as a member of the new firm." In 1884 the assignment was executed, B. joining therein, in which the debt to the estate was preferred. He made no defense to an action brought by the executors against him and the other members of the firm to recover the debt as a firm debt, and they obtained judgment therein. Plain-tiffs' debts accrued subsequent to B.'s becoming a member of the firm. Held, that the stock and property of the old firm at the time B. became a member was subject to the equitable lien of the then existing creditors of the firm; that it was inferable from the circum-stances that the new firm had assumed the debt to the estate, and, therefore, had a right to treat it as a debt of the firm, and so, it was properly preferred.

The assignment directed the payment of and the assignee paid $102,827 to defendants; in making up the account the interest was compounded. The debt owing to the estate at the time of the assignment with simple interest was $82,649. The assignors in fixing the amount, the assignee in paying and defendants in receiving it acted in good faith. In a prior action brought by another creditor the court decided the preference to the extent of $20,223 was invalid, and directed the executors to restore that amount, which was done by them. *Held,* that in the absence of any fraudulent intent, the payment was valid and would be protected, to the extent of the actual debt.

In fixing the actual debt at $82,649 the interest was computed on the principal to such time as the payments equalled or exceeded the interest, and then by deducting the payments from the aggregate of principal and interest, a new principal was ascertained. *Held,* a proper method of computation.

(Argued October 11, 1892; decided November 29, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 31, 1892, which affirmed a judgment dismissing plaintiff's complaint as to certain defendants.

This action was brought by judgment creditors to set aside as fraudulent an assignment for the benefit of creditors, and to procure the application of certain moneys paid to defendants, in pursuance of a preference contained therein, to the the satisfaction of plaintiff's judgment.

*John J. Adams* for appellants. The preferred claim was not due by the firm which assigned. (*Serviss* v. *McDonnell,* 107 N. Y. 264; *Wheat* v. *Rice,* 97 id. 296; *S. N. Bank* v. *Burt,* 93 id. 245; Lind. on Part. 206.) Bentley, the incoming partner, did not agree to assume the liability of the old firm. (Lind. on Part. 209; *Merrill* v. *Green,* 55 N. Y. 273; *Simson* v. *Brown,* 68 id. 358.) There was not an implied agreement on the part of Bentley. (*Fuller* v. *Rowe,* 59 Barb. 54; *Chambers* v. *Smith,* 60 Hun, 250; *C. C. S. Bank* v. *Walker,* 66 N. Y. 429.) The old firm's insolvency prevented the new firm from assuming liability for its debts, it, too, being insolvent. (*C. W. Co.* v. *Hoderpyl,* 61 Hun, 563; *Nordlinger* v. *Anderson,* 123 N. Y. 548; *Bulger* v. *Rosa,* 119 id. 466;

*C. Bank* v. *Williams*, 128 id. 82; *Wilson* v. *Robertson*, 21 id. 591; *Young* v. *Hill*, 67 id. 167; *Boardman* v. *M. S. & L. S. R. Co.*, 87 id. 187; *Ackerman* v. *Emmett*, 4 Barb. 649; *Foreman* v. *Foreman*, 17 How. Pr. 257; *Stewart* v. *Petree*, 55 N. Y. 623; *Guernsey* v. *Rexford*, 63 id. 631.) The admission, on the trial of this action, that $20,000 of the preference to the Myers estate was fictitious, affects the defendants' title to the fund as a whole. (*Peyser* v. *Myers*, 56 Hun, 180; *A. E. Bank* v. *Webb*, 36 Barb. 291; *Roberts* v. *Victor*, 130 N. Y. 585; *Loos* v. *Wilkinson*, 110 id. 209; *Billings* v. *Russell*, 101 id. 226; *People* v. *Chalmers*, 60 id. 159; *Coope* v. *Bowles*, 28 How. Pr. 10; *Riggs* v. *Murray*, 2 Johns. Ch. 565.)

*William Pierpont Williams* for respondents. Bentley, who became a partner in the firm on February 1, 1882, was liable with his copartners for the debt due the Meyers estate. (*N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Griswold* v. *Haven*, 25 id. 595; *Arnold* v. *Nichols*, 64 id. 117; *Hannigan* v. *Morrisey*, 37 N. Y. S. R. 138.) The respondents are entitled to retain all the preference money except so much of it as represented compound interest. (*Simons* v. *Goldbach*, 56 Hun, 204; *Russell* v. *Winne*, 37 N. Y. 591; *F. N. Bank* v. *C. N. Bank*, 124 id. 552; Bump on Fraud. Cons. [3d ed.] 486; *Sanford* v. *Wheeler*, 13 Conn. 165; *Ayres* v. *Husted*, 15 id. 504; *Felton* v. *Wadsworth*, 61 Mass. 587.) The amount of compound interest included in the preference was only $20,223. (*State* v. *Jackson*, 1 J. C. 13; *Young* v. *Hill*, 77 N. Y. 167; *French* v. *Kennedy*, 7 Barb. 452; *Williams* v. *Houghtailing*, 3 Cow. 86; *Bennett* v. *Cook*, 2 Hun, 527, 529; *A. C. & I. Co.* v. *Verner*, 22 Ohio St. 373; *Stoughton* v. *Lynch*, 2 J. C. 210, 214; *Von Hemert* v. *Porter*, 11 Metc. 210, 219.)

ANDREWS, J. It will be convenient to consider the validity of the preference to the estate of John K. Myers for the sum of $102,872, made in the assignment of the firm of Halsted, Haines & Co., dated July 12, 1884, irrespective of the claim

that the preference exceeded the amount of the debt owing to
that estate.   The parties assailing the preference are creditors
of the firm, whose debts arose subsequent to February 1, 1882,
the date on which Bentley became a member.   The debt to the
Myers estate preferred in the assignment, existed at the time
of the admission of Bentley as a partner, except as it was
increased by interest accruing thereafter.   If the debt had not
become the debt of the assigning firm, and there was no equit-
able right to prefer it in the assignment, the preference was
void, because in that case it would be in contravention of the
rule which forbids an insolvent firm from appropriating its
property to the payment of other than debts of the firm, or
debts for which the members of the firm were jointly liable,
to the prejudice of the firm creditors.   (*Wilson* v. *Robertson,*
21 N. Y. 587; *Citizens' Bank* v. *Williams,* 128 id. 77.)

It is indisputable that an incoming partner is not as, of
course, liable for the debts or transactions of the firm, and that
he can be made liable in an action at law by the creditor only
by some agreement on his part to assume such liability.   The
mere fact that he becomes a member of the firm creates no
presumption of the existence of such agreement.   The fact,
however, may be established by indirect as well as by direct
evidence, and may, in the absence of an express agreement,
be inferred from facts and circumstances which justly raise an
implication of its existence.   (*Serviss* v. *McDonnell,* 107 N.
Y. 264; *Hannigan* v. *Morrissey,* 37 N. Y. St. Rep. 138; Lind.
on Part. p. 208.)   The facts in the record justify the conclu-
sion that Bentley came into the firm upon the tacit understand-
ing that there was to be no break in the business, and the debt
to the Myers estate was to be treated as the debt of the new
firm.

The stock and assets of the prior firm went into the posses-
sion and ownership of the new firm.   There was no inventory,
and the business was conducted, after Bentley became a mem-
ber of the firm, in precisely the same manner as before.
Bentley had been a salesman of the preceding firm of the same
name for several years.   He brought no capital into the firm,

and the firm had no capital except that which was represented by the stock and assets derived from the prior firm. The debt to the Myers estate was credited to the estate on the books of the firm of 1882, and was credited with interest and debited with items for goods and money had by the executors from the firm up to the time of the assignment. On the 1st of January in the years 1883 and 1884, and again on the 11th of January, 1884, the new firm of Halsted, Haines & Co. rendered statements of account to the executors of Myers, showing credits and debits and the net balance due to the estate. It seems that Bentley, when he became a partner, did not examine into, nor did he know, the financial condition of the firm. He had nothing to do with the books, and while he knew that the firm was using money of the estate of Myers, he did not know the amount and made no inquiries. He testified that it was his intention when he went into the firm " to take the affairs of the old firm as he found them, and go on with them as a member of the new firm."

While it is doubtless true that Bentley joined the firm in ignorance of its financial condition, it is difficult to resist the inference that it was the understanding of all the partners that the debt of the Myers' estate was to be treated and regarded as a debt of the firm. In 1884 Bentley joined in the execution of the firm assignment, in which the debt was preferred, and afterwards made no defense to an action brought by the estate against himself and the other members to recover the debt as the debt of the firm, in which action judgment was rendered for the plaintiffs. If it was essential to maintain that there was a technical novation of the debt and a substitution of the members of the firm of 1882 as the debtor in exoneration of or in place of the persons originally liable thereon, in order to render the preference valid, the undertaking would encounter serious difficulties. Such a novation could only be effected by the agreement of the original debtors, the new firm and the creditor. It would be difficult to establish from the circumstances disclosed in the record that the creditor agreed to take the new firm as his debtor in place of the former members of

the firm (one of whom had withdrawn in 1879, and another had died in 1880). So also, if the case depended upon the application of the principle of *Lawrence* v. *Fox* (20 N. Y. 268), it would be difficult to find the existence of such a promise for the benefit of the estate of Myers made between Bentley and his copartners, as would support an action at law by the executors of that estate against the firm of 1882, to recover the debt. But the doctrine now well settled that in case of the insolvency of a firm the joint property must be first applied to pay the joint debts, has its foundation in the equity that the credit given to the firm is presumed to have been extended upon the faith of the joint liability and on the fact that the property of the firm is in many and, perhaps, in most cases a fund derived in part at least from the creditors who have dealt with the firm in the ordinary course of business. The corpus of the firm property belongs to the firm as an entity, and not to the individual partners, their separate interest being only in the surplus after an adjustment of the partnership debts and accounts, and hence the right of individual creditors is the right of their debtors in such surplus.

This priority of lien of the firm creditors is not divested by a transfer by an insolvent firm of the firm assets to one or more of the partners, nor can it be affected as we conceive by any mere change in the personnel of the firm, as by the withdrawal of one partner from the firm or the introduction of a new member. It is found and is undisputed that when Bentley became a member of the firm in 1882, the firm of Halsted, Haines & Co. was insolvent and had been insolvent from 1875, although the fact does not seem to have been known to the firm. The stock and property of the firm prior to and at the time Bentley became a member was subject to the equitable lien of the then existing creditors of the firm, among whom was the estate of Myers. This stock and property was transferred to the firm of which Bentley became a member. It was, as has been said, the understanding between the partners, inferable from the circumstances, that the new firm should assume the Myers debt, and when the open insolvency occurred in 1884,

this debt was preferred as a debt of the insolvent firm.   In this we think there was no violation of any legal or equitable right of the intervening firm creditors.   The Myers estate had at least an equal equity to payment out of the firm assets.   The new firm had the benefit of the stock and property of the prior firm, which presumably formed a large share of its assets at the time of the assignment.   We think the new firm had the right to recognize the debt owing to the Myers estate, and to treat it as a debt of the new firm when it came to make the assignment.   This right does not depend upon the question of novation, nor upon the right of the executors of the Myers estate to recover at law against the firm of 1882.   The firm having, under the law existing in 1884, a right to make a preference among its creditors, it had a right we think to prefer a debt which in the origin of the partnership and concurrently with the transfer of the stock and assets of the prior firm, it had recognized as the debt of the new partnership. The principles set forth in the opinions in the case of *Menagh* v. *Whitwell* (52 N. Y. 146) confirm and justify the conclusion we have reached.

It is claimed, however, that irrespective of this question the preference was void for the reason that it exceeded the actual and legal debt owing to the Myers estate.   The assignment directed the assignee to pay " to the estate of John K. Myers $102,827," and this sum was paid by the assignee to the executors of the estate of Myers, pursuant to the direction, September 9, 1884, four years before the commencement of the present action.   The legal debt owing to the estate of Myers at the time of the assignment was, as is found, only $82,649.   The discrepancy between the debt as stated in the assignment and the legal debt, was occasioned by embracing in the account as written up and rendered from time to time by Halsted, Haines & Co., compound interest; that is to say, the account was made up with annual or semi-annual rests, and the debt as preferred included $20,223, or thereabouts, of interest arising from this method of computation.   It is conceded that computing the interest according to

the rule laid down in *State of Connecticut* v. *Jackson* (1 Jo. Ch. 13) and approved in *Young* v. *Hill* (67 N. Y. 162), the true amount of the debt at the time of the assignment was $82,649. It is found, and of this there is no contradiction, that the assignors in fixing the amount of the debt, as stated in the assignment, and the assignee in paying that amount and the executors in receiving it, acted in good faith and without any intent to defraud and upon the belief that the amount preferred and paid was the actual sum due and legally owing to the estate. The Supreme Court in a prior action by another creditor decided that the preference to the extent of $20,223 was invalid, and it adjudged that the estate of Myers should restore that sum, and this sum has been repaid and applied upon the debts represented by the plaintiff in that action. It is now insisted by the plaintiff in this action that the preference having exceeded the actual debt, the assignment was fraudulent and void and that the estate of Myers is bound to restore at the suit of creditors of the firm, not the excess simply, but the whole amount paid and received under the assignment.

It is not necessary to determine whether an action to set aside an assignment for fraud could be supported upon the bare proof that the assignor had overstated the amount of the preferred debt, where it was made to appear that it was a mere mistake in the method of computation or in the amount due, and was not attributable to any fraud. In the present case one creditor is seeking to compel another to pay back money received by the former under the assignment, in good faith, in discharge of an honest debt before any lien had been acquired by the plaintiff on the fund in the hands of the assignee, and the plaintiff bases his claim on the ground that the estate was preferred a larger amount than the actual debt, and that although the parties acted in good faith and the estate has accounted for the excess, it cannot retain the balance, which represents only the actual debt owing by the insolvent firm. The opinion of the Second Division of this court in *Knower* v. *Central National Bank* (124 N. Y. 552),

considers with great ability the question of the validity of a payment made by an assignee for the benefit of creditors to a preferred creditor, pursuant to the direction in the assignment, before lien acquired or judgment rendered declaring the assignment void. The opinion in that case is a satisfactory answer to the claim made in this action, and while this case differs in the circumstance that here the preference exceeded the legal debt and the payment was made of the whole amount preferred, this, we think, did not, in the absence of an actual fraudulent intent, prevent the application of the principle of the case cited to protect the payment to the extent of the actual debt.

In fixing the actual debt at $82,649, the court applied the principle of computation recognized in the cases to which we have referred. The interest was computed on the principal to such time as the payments equalled or exceeded the interest, and then a new principal was ascertained. The method of computation adopted has been long recognized in this state as legal, and we perceive no reason for disregarding it in the present case.

We think there is no error in the record calling for a reversal of the judgment, and it should, therefore, be affirmed.

All concur.

Judgment affirmed.