THE FLOUR CITY NATIONAL BANK OF ROCHESTER, Respondent, *v.* CHARLES A. WIDENER, Appellant, Impleaded with Others.

1. PARTNERSHIP — PRESUMPTION AS TO PARTNER'S KNOWLEDGE OF CONTENTS OF BOOKS. A member of a firm is presumed to know the contents of the partnership books of account, where he has access to them.

2. PURCHASE OF INTEREST IN PARTNERSHIP — LIABILITY FOR RENEWAL OF PARTNERSHIP NOTE. One who purchases an interest in a partnership, subject to all existing debts of the old firm, due and to become due, and has full access to its books as a general partner, cannot escape liability for a subsequent renewal of a firm note which is obtained partly on his credit, by reason of the fact that the renewal was made without his knowledge or consent, and that he had practically nothing to do with the business, but was engaged in another occupation, leaving the partnership business to be carried on entirely by his partner. He is in such case estopped to deny that the transactions were with his knowledge or consent.

*Flour City Nat. Bank* v. *Widener*, 24 App. Div. 330, affirmed.

(Argued April 26, 1900; decided June 5, 1900.)

APPEAL from a judgment of the Supreme Court, entered December 23, 1897, upon an order of the Appellate Division in the fourth judicial department, overruling defendant's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for plaintiff upon a verdict directed at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Horace L. Bennett* for appellant. Widener did not render himself liable for the note in action by the mere act of purchasing the interest of Petrie in the business and effects of Smith & Petrie. (*Corner* v. *Mackey*, 147 N. Y. 574; *Fuller* v. *Rowe*, 59 Barb. 344; 57 N. Y. 23; *Serviss* v. *McDonnell*, 107 N. Y. 260; *Peyser* v. *Myers*, 135 N. Y. 599; *Wheat* v. *Rice*, 97 N. Y. 296; 1 Lindley on Part. 390, 394; Story on Part. [7th ed.] §§ 152, 153; Pars. on Part. [4th ed.] §§ 336,

339; *Spaunhorst* v. *Link*, 46 Mo. 197; *Hannigan* v. *Allen*, 127 N. Y. 639.)  Widener is not liable for the note by reason of any agreement which he made.  (*Belmont* v. *Coman*, 22 N. Y. 438; *Smith* v. *Truslow*, 84 N. Y. 660; *E. L. A. Society* v. *Bostwick*, 100 N. Y. 628; *Collins* v. *Rowe*, 1 Abb. [N. C.] 97; *Kountz* v. *Holthouse*, 85 Penn. St. 235; *Ayrault* v. *Chamberlin*, 26 Barb. 83; Story on Part. [7th ed.] § 152; Pars. on Part. [4th ed.] §§ 336, 339.)  Whether such an agreement existed under the evidence in this case was a question for the jury.  (Pars. on Part. [4th ed.] §§ 336–339; *Ayrault* v. *Chamberlin*, 26 Barb. 83.)

*Joseph S. Hunn* for respondent.  It is not necessary to prove an express agreement by an incoming partner to pay a prior debt of the firm; it may be established by evidence of facts from which it may be implied.  (*Peyser* v. *Myers*, 135 N. Y. 599.)  The note in suit is the legal obligation of the defendant.  (*F. Nat. Bank* v. *Morgan*, 73 N. Y. 593.)  Defendant's lack of knowledge of the business affairs of Smith & Co. cannot impair plaintiff's right to recover against him.  (*Ex parte Blake*, 1 Ves. 166; *Fairchild* v. *Fairchild*, 64 N. Y. 471; *Hotopp* v. *Huber*, 160 N. Y. 524.)

BARTLETT, J.  The material facts out of which this controversy arises are as follows:  Smith and Petrie were engaged in the wall paper business in the city of Rochester from 1890 to May 23, 1894; during that time they kept a bank account with the plaintiff.  On the 21st of March, 1894, the plaintiff discounted a note of the firm, payable in three months, for five hundred dollars.  The proceeds of this discount were used in the business of the firm.

On the 23rd of May, 1894, by a written agreement between the parties, Petrie sold and transferred to the defendant Widener his interest in the firm of Smith & Petrie, including the goods, stock, fixtures, accounts and other property specifically enumerated.  The agreement, among other things, stated: "This transfer is made subject to all existing debts

and demands due and to become due by said firm, which is hereby covenanted and agreed does not exceed the sum of three thousand dollars." It was agreed that the property transferred would inventory at a sum not less than eight thousand dollars. Widener paid for the property by a conveyance of certain real estate and a cash payment of two hundred dollars.

The note referred to fell due in June, 1894, and was renewed by Smith, who signed the renewal note in the name of the firm of Albert E. Smith & Company, the style under which Smith and Widener continued the business. Smith testified that when this note was taken to the bank the officer who passed upon the transaction remarked that there had been a change in the firm and asked if Widener was now interested in the business; he also asked if it was Widener, the lawyer in the Arcade Building. These inquiries were answered by Smith in the affirmative. It thus appears that Widener's credit was an element in the renewal of the Smith and Petrie note. In September, 1894, when this last note fell due, it was renewed in like manner.

On the 4th of December, 1894, Widener sold out his interest in the firm to Smith, and the latter made a general assignment for the benefit of creditors the same day.

When the last renewal note fell due on the 23rd of December, 1894, payment was demanded by the plaintiff and refused, and thereupon this action was begun against Smith, Widener and two indorsers of the note.

Widener defends this action on the ground that he received the transfer of the firm property from Smith and Petrie subject to all existing debts and demands due and to become due by said firm, but that the provisions of the written agreement created no personal liability as to him for the debts of the old firm.

It is argued on behalf of Widener that he occupies the same position as the grantee of real estate who purchased subject to a mortgage incumbrance, but does not covenant to pay the same.

It is not necessary to consider this point, as it appears that the matter of the renewal of the original note of March, 1894, in the following June and September, was a matter of entry in the books of the firm of Albert E. Smith & Company.

Widener's contention is that he had nothing to do with the business, although a general partner. He testified: "I did practically nothing in reference to the business in which I had bought an interest; Smith continued to conduct the business and I continued to practice law.   *   *   *   I had no knowledge of the state of the accounts between the bank and that firm; none whatever; in fact, I did not know that he had a bank account with the bank at all.   *   *   *   I have never had any conversation with Smith on the subject of his signing the firm name of Albert E. Smith & Company to that note. I did not know that he had done it at the time that he did it. I first learned that he had done so at the time he made the general assignment in December, 1894. I did not give him permission to sign the firm name to that note.   *   *   *   All that I knew of the conduct of the business of Albert E. Smith & Company during 1894 was that once in a while I would stop at the store, passing it in the morning, and speak to Smith, and he would mention once in a while some place where he was doing some work, and that is substantially all that I knew about it. I left the conduct of the business entirely to him."

There is no doubt that a third person purchasing an interest in an old firm does not by that fact alone become liable for its debts. The purchaser, however, may make himself liable either by direct agreement or by such transactions on the part of the new firm, of which he is a member and of which he is chargeable with notice, as to work that result.  ·

Where a member of a firm has access to its books of account he is presumed to know their contents. (*Fairchild* v. *Fairchild*, 64 N. Y. 471, 480; *Hotopp* v. *Huber*, 160 N. Y. 524, 530.)

The undisputed evidence establishes that from June 23rd,

1894, until Widener sold out his interest in the firm to Smith in December following, the books of Albert E. Smith & Company showed that the name of that firm had been used in renewing paper discounted by the plaintiff as before stated.

The fact that Widener was engaged in another occupation and saw fit to allow Smith to manage the business, does not in any way change his legal position toward the plaintiff. Widener admits that he occasionally called at the place of business and talked with his partner as to matters in hand. As a general partner he had full access to the books of the firm, and is chargeable with whatever those books disclosed. If he had examined them he would have ascertained the facts already detailed in regard to these discounts, and that being so, he is chargeable in law with whatever he would have discovered had he made the examination. He is, therefore, estopped to deny that these transactions were with his knowledge or consent.

In *Peyser* v. *Myers* (135 N. Y. 599) Judge ANDREWS said : "It is indisputable that an incoming partner is not as, of course, liable for the debts or transactions of the firm, and that he can be made liable in an action at law by the creditor only by some agreement on his part to assume such liability. The mere fact that he becomes a member of the firm creates no presumption of the existence of such agreement. The fact, however, may be established by indirect as well as by direct evidence, and may, in the absence of an express agreement, be inferred from the facts and circumstances which justly raise an implication of its existence. (*Serviss* v. *McDonnell*, 107 N. Y. 264; *Hannigan* v. *Morrissey*, 37 N. Y. St. Rep. 138 ; Lind. on Part. p. 208.)"

In the case cited, while an existing firm was indebted to an estate, a new firm was formed under the same name by bringing in a new partner. The latter knew of the existence of the debt, but not the amount thereof, and he made no inquiry; he contributed no capital to the new firm, had none except the stock and assets of the old firm, and the business was conducted after he became a member precisely as before. The

debt to the estate was credited to the executors on the books of the new firm; they were subsequently credited with interest accruing, charged with goods and money paid and statements of the accounts were rendered to them. The court held that the new partner was charged by reason of these facts.

There is no conflict of evidence regarding the material facts in the case at bar, and, consequently, there was no error in the learned trial judge directing a verdict for the plaintiff and ordering the exceptions to be heard at the Appellate Division.

The judgment appealed from should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN, HAIGHT, MARTIN, VANN and LANDON, JJ., concur.

Judgment affirmed.