In re KLEIN et al.

(District Court, N. D. New York. June 10, 1922.)

1. Partnership ⬙⟊73—Held to have assumed pre-existing debts of a partner; "equity."

Where a partnership agreement provided for the purchase by one partner of a half interest in the business previously conducted by his co-partner, and for an inventory, and required the purchasing partner to pay "the amount of equity" the selling partner "has in said merchandise," and goods previously ordered were received and mingled with the merchandise in stock when the inventory was taken, and some pre-existing debts were paid by the firm check and some by the selling partner, who was thereafter as to some of payments reimbursed by the firm, *held*, that the pre-existing debts were assumed by the partnership, since under the agreement the purchasing partner did not pay anything for so much of

[1] 33 Sup. Ct. 113, 219, 57 L. Ed. 380, 381.

the goods as were equal in value to the debts; the word "equity" meaning the value of the property beyond the debts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equity.]

2. **Partnership ⬩⟹73—Incoming partners' agreement to assume debts of former owner of business may be established by indirect evidence, or be inferred from facts and circumstances.**

An agreement by incoming partners to assume the debts of the former owner or owners of a business may be established by indirect, as well as by direct evidence, and may, in the absence of an express agreement, be inferred from facts and circumstances which justly raise an implication of its existence.

In Bankruptcy. In the matter of Herman B. Klein and Joseph Elsohn, individually and as copartners doing business as Klein & Elsohn. On involuntary petition for bankruptcy, the firm and members thereof are adjudicated bankrupt.

Joseph Krinsky, of New York City, for petitioners.

Costello, Burden, Cooney & Fearon and George H. Cole, all of Syracuse, N. Y. (D. F. Costello, of Syracuse, N. Y., of counsel), for Elsohn.

COOPER, District Judge. On October 10, 1921, and for some years prior thereto, Herman D. Klein was engaged in the shoe business in the city of Auburn, having two stores in said city. On that date a written agreement was entered into between Klein and William H. Elsohn, providing in substance that Elsohn should have a half interest in said shoe business. On or about January 14, 1922, an involuntary petition in bankruptcy was filed against the above firm. One of the partners, said William H. Elsohn (denominated as "Joseph" Elsohn in the petition) answered, denying that the firm was insolvent, and denying any individual liability for the debts previously incurred by Klein. The question here is as to whether or not the firm should be adjudicated bankrupt. Inasmuch as no question is raised as to the bankruptcy of the firm, if the debts of Klein before the partnership were assumed by the partnership, the decision here must rest on the determination of the question of the assumption of the debts by the firm. The individuals are concededly without property other than their interest in the partnership.

The partnership agreement provided that prior to January 1, 1922, Elsohn should pay to Klein $2,000 to $2,500 toward the purchase price of a half interest in the firm, and that on January 1, 1922, an inventory at market value should be taken of the merchandise of the two stores, and that Elsohn should pay to Klein the remainder of the sum equal to a half interest in the "equity." The exact language in that respect, as quoted from the contract, is as follows:

"That thereafter and on the 1st of January, 1922, an inventory will be taken of the goods in the stores located at 40 and 46 Genesee street at a fair market value, and that the party of the second part hereby agrees that he will pay to the party of the first part *the amount of equity which the party of the first part has in said merchandise.*"

⬩⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Elsohn paid about $2,000 at or about the time of the making of the agreement, and subsequent thereto, and at one or more times, paid additional moneys, so that the total amount paid by him was $2,650, plus a note of $500, on which $150 was paid. The written agreement contained no reference to the liabilities which Klein had incurred for the goods constituting the merchandise to be turned over to the partnership, nor to any assumption of any debts whatever by Elsohn, except the necessary implication from the use of the word "equity," which must be interpreted as meaning the value of the goods in excess of the unpaid purchase price thereof.

Elsohn immediately became active in the business. The moneys deposited by him and moneys taken in after October 10th from the sale of these goods were deposited in the firm account. The moneys thus deposited were used to pay the expenses of the business and presumably payments to the partners in lieu of salaries. Some of the pre-existing debts were paid by the firm check. Some of such debts were paid by Klein individually, but as to some or all of these he was reimbursed by the firm check payable to him. Some of these payments of the pre-existing debts direct to the creditors, and others through Klein, were made with the consent of Elsohn; but to some of these he protested, although he apparently contented himself merely with protesting.

About $4,000 worth of goods previously ordered by Klein were received after the partnership agreement was made. Some additional stock was ordered by the firm and received. The goods on hand on October 10, 1921, the goods previously ordered by Klein and subsequently received by the firm, and the goods ordered and received by the firm, were all mingled in the two stores conducted by the firm. Thus goods and moneys were all mingled. So far as can be determined from the testimony, the liabilities on October 10, 1921, were less than the value of the goods. The value of the goods was about $15,000. At the time of the filing of the petition, on the 14th day of January, 1922, the liabilities exceeded the value of the assets.

[1] It is doubtless true that Elsohn entered into the partnership agreement in ignorance of the financial status of Klein's business and of the prevailing business conditions. While this is true, it is difficult to resist the inference that it was the understanding of both Klein and Elsohn that the outstanding bills of Klein's for merchandise were to be treated and regarded as debts of the firm. Though not a word is said in the agreement about debts of Klein for merchandise in the stores, or the assumption thereof, the inferences to be drawn from the agreement and the conduct of the parties make it reasonably clear that that was the intention. Elsohn was not to pay anything for so much of the goods as were equal in value to the debts. He was only to pay his proportionate share for the value of the goods in excess of the debts. That is unquestionably what is meant by the use of the term "equity" in the agreement. Whenever one speaks of the "equity" in a piece of real estate, every one understands that it means the value of the property beyond the amount of the mortgage debt. So here the word "equity" means the value of the property beyond the debts. Elsohn

could hardly expect to receive, for less than $3,000, a half interest in goods worth about $15,000, together with a proportionate share of the good will of an established business, when, as he knew, or must be assumed to know, the merchandise was subject equitably to large liabilities, and yet expect to be free himself and to have the goods free from these liabilities.

[2] The agreement by incoming partners to assume the debts of the former owner or owners may be established by indirect as well as by direct evidence, and may, in the absence of an express agreement, be inferred from facts and circumstances which justly raise an implication of its existence. Serviss v. McDonnell, 107 N. Y. 264, 14 N. E. 314; Hannigan v. Allen, 127 N. Y. 642, 27 N. E. 402; Peyser et al. v. Myers, 135 N. Y. 599, 602, 32 N. E. 699. The facts and circumstances of the case justify the conclusion here, as in Peyser v. Myers, supra, that Elsohn came into the firm on the tacit understanding that there was to be no interruption in the business, and that the debts of Klein for the merchandise were to be treated as the debts of the firm. No other construction seems to harmonize with the undisputed facts in the case. The protestation at times on the part of Elsohn against the payment of such large sums to the creditors, or to Klein for the creditors, merely indicates dissatisfaction with the bargain which he had made. This dissent ended in agreement to dissolve the partnership.

It is quite true that he probably made a bad bargain. The amount of debts and the value of the property might have been, and probably were, incorrectly estimated. But the court is ordinarily without power to relieve one from a bad bargain consciously entered into. The consent of the creditors of Klein to accept the firm as debtor is sufficiently established by the efforts of a committee of the creditors to effect with the father of Elsohn (who apparently advanced the money put into the business by the son, and who may be deemed to be the agent of the firm) a settlement of the debts incurred both before and after the partnership.

The referee was right in his decision, and the firm and the individual members must be adjudicated bankrupt. The findings of the referee are affirmed. An appropriate order may be entered accordingly.