WILLIAM H. WOOLLEY and Another, as Executors, etc., of JAMES V. S. WOOLLEY, Deceased, Plaintiffs, *v.* REMSEN JOHNSON, Defendant.

First Department, June 6, 1924.

Contracts — action to recover amount due under written contract — plaintiff's testator purchased three-eighths interest in defendant's stock in corporation and same interest in obligations due to defendant from corporation — agreement also provided for further advances from plaintiff's testator — agreement provided that after testator received back money paid with interest defendant would be entitled for services to one-third of amount to which testator was entitled in excess of amount paid by him — construction of contract requires casting of interest — payments made to testator first credited to interest and balance, if any, to principal — balance remaining unpaid constituted new principal to be reduced in same manner.

In an action on a written contract to recover the balance alleged to be due thereon, it appeared that the plaintiff's testator entered into an agreement with the defendant, who owned a part of the capital stock of a corporation and who had advanced a considerable amount of money to the corporation, to purchase three-eighths of the stock held by the defendant and of the indebtedness then due to the defendant from the corporation or which might thereafter be incurred by the corporation to the defendant, and the agreement provided that after the testator had been repaid the amount paid by him to the defendant under the agreement, with interest at the rate of six per centum per annum, the defendant would be entitled to receive for his services a sum equal to one-third of the amount to which the testator would be entitled in excess of the sum so paid in by him, with interest, such one-third to be paid out of the excess.

*Held,* that in determining the application of the amounts repaid by the defendant to the plaintiff's testator, the proper method is to cast the interest, that is, to compute the interest on the amounts advanced by plaintiff's testator from the dates of such advances to the date of the first repayment by the defendant, and then credit the repayment first to the interest and the balance, if any,

to the principal amount. If the amount of the repayment is not sufficient to pay all the interest due, the surplus interest must not be taken to augment the principal, but the interest continues on the former principal until the time when the payments taken together exceed the interest due and then the surplus is to be applied toward discharging the principal, and interest is to be computed in the same manner thereafter.

The contention by the defendant that the repayment should be credited to the money advanced by the plaintiff's testator and that the interest should not be paid until after the principal sum had been paid, and that the defendant was entitled to receive for his services one-third of the excess after the principal alone had been repaid, cannot be sustained. The defendant was not entitled to any compensation until after the principal amount advanced by the plaintiff's testator, with interest calculated in the manner heretofore stated, was repaid.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*William R. Brinckerhoff* [*William H. Woolley* of counsel], for the plaintiffs.

*Alfred S. Brown* [*Franklin W. Morrell* of counsel], for the defendant.

DOWLING, J.:

The following agreed facts appear herein:

On December 31, 1908, James V. S. Woolley, plaintiffs' testator, and Remsen Johnson, the defendant, entered into an agreement in writing reciting that the Neponsit Realty Company, a corporation organized under the laws of New York, is the owner of record of a tract of land known as the Hatch property at Rockaway Beach, containing between 350 and 400 acres; that its capital stock was $8,000 and that defendant Remsen Johnson is the owner and holder of one-fourth part thereof; that Johnson has loaned and advanced to the corporation the sum of $41,250, for which the corporation is indebted to him, and has agreed to loan and advance to it further sums of money from time to time; that Woolley was desirous of acquiring an interest in the capital stock so owned by Johnson and also in the indebtedness then due, or which might thereafter be incurred, by the corporation to Johnson. The agreement then provided that in consideration of $15,468.75 to him paid, Johnson thereby sold and assigned to Woolley an undivided three-eighths interest in the capital stock so owned by Johnson and also an undivided three-eighths interest in the indebtedness due him from said corporation, and Woolley agreed that he would on demand pay to Johnson three-eighths of all sums of money which might thereafter be demanded of the latter by the corporation, and be loaned and advanced by him thereto, and upon making such payments Woolley should be entitled to receive from Johnson an assignment and transfer in due form of an undivided three-eighths interest in the claim of Johnson against the corporation for the money so

loaned and advanced. Woolley agreed to assume, bear and discharge three-eighths part of any indebtedness or obligations which Johnson might incur by reason of his interest in the capital stock of the corporation or by reason of his interest in any of its assets or property, and further agreed to be bound by any and all agreements, obligations and terms imposed upon Johnson by the corporation. The agreement then provided that the stock and all evidences of indebtedness of the corporation should continue to be held by Johnson and in his name alone and be dealt with, used and managed by him as he deemed advisable, without any interference by Woolley, with the right to Woolley to protect his interest in the stock and property in the event that Johnson failed to protect same. It also provided that in the event of Woolley failing to make any payment to Johnson under the terms of the agreement within ten days after demand, all his rights under the agreement and all his interest in the capital stock and in the indebtedness from the corporation to Johnson should cease and determine, except only that Johnson should repay to Woolley out of the moneys received from the corporation on account of capital or indebtedness the *pro rata* share of the amount actually paid by Woolley to Johnson on account of such capital or indebtedness, without interest or other additions. Then follows the clause which has given rise to this controversy and which reads as follows: " It is further agreed that after the party of the second part shall have received back the amount paid by him to the party of the first part under this agreement, with interest at the rate of six per centum per annum, the said party of the first part shall receive and be paid in lieu of commissions and as compensation for his services a sum equal to one-third of the amount to which the party of the second part shall become entitled in excess of the sum so paid in by him with interest; such one-third to be paid out of said excess."

In accordance with the terms of the agreement Woolley paid Johnson between December 24, 1908, and May 31, 1912, various sums of money which on the latter date aggregated $80,227.34.

Between June 6, 1913, and December 3, 1919, Johnson made payments to Woolley in accordance with the terms of the agreement amounting in all to $77,478.26. Woolley died December 14, 1919, and thereafter between February 3, 1920, and October 13, 1922, Johnson made payments to plaintiffs, as executors of the last will and testament of Woolley, which on the latter date aggregated $31,961.25, making the total amount paid to Woolley and his executors, $109,439.51.

On January 4, 1923, Johnson received from the corporation the sum of $7,500, and on April 15, 1923, he received the further sum

of $3,000 under the agreement. In accordance with the terms of the agreement three-eighths of those amounts, namely, $3,937.50, is due and payable to the executors of Woolley, but is held by Johnson pending the termination of this controversy. There is also a possibility of further payments being received by Johnson from the corporation under the agreement.

The controversy which has arisen between the parties is wholly in regard to the method of computing the amount to be paid to Johnson in lieu of his commissions and compensation under the final clause of the agreement above mentioned. Specifically, it narrows itself down to the method to be used in computing the interest referred to in the quoted paragraph of the agreement.

The contention of the plaintiffs is that the proper method of computing this interest is that known as " casting of interest," which is fully set forth in the agreed statement of facts. Briefly, it is the computation of interest on the amounts advanced by Woolley from the dates of such advances to the date of the first repayment by Johnson, and then crediting the repayment first to the interest and the balance, if any, to the principal amount. Interest is then computed on this new principal amount until the date of the next repayment by Johnson. And the amount of that repayment is first credited to this interest and the balance, if any, to the principal. This method of computation shows that even including the payments in the hands of the defendant, of which he has not yet turned over a three-eighths part to the plaintiffs in accordance with the agreement, James V. S. Woolley and his executors have not yet received back the amount advanced with interest computed in this way, and that there is still $668.29 to be repaid to them before the defendant would be entitled to any compensation. After that amount has been received, the said defendant will be entitled to one-third of all future payments which will hereafter be received.

The contention of the defendant is that under the terms of the agreement above mentioned the said Woolley purchased from Johnson and became the owner of an undivided three-eighths interest in one-quarter of the capital stock of the Neponsit Realty Company and in the moneys already due and owing or which might thereafter become due and owing from said corporation to Johnson for loans and advances already made or thereafter to be made; that, therefore, Woolley never became entitled to interest on the moneys paid by him to Johnson for the said undivided three-eighths interest in said capital stock and advances, but only became entitled to three-eighths of whatever Johnson received from said corporation by way of dividends or on the distribution of its capital

and assets among those entitled thereto as creditors and stock-holders; that the payments made by Johnson to Woolley or his executors were not made because of any indebtedness from him to Woolley or his estate but were made on account of the undivided three-eighths interest which Woolley had purchased from him and then owned in said capital stock and advances; that at the time when said payments were made there was no interest due from Johnson to Woolley upon which such payments could be applied and that, therefore, the method of applying payments first to the extinguishment of interest and then to the reduction of principal does not apply; that the only purpose of computing interest on the several amounts paid by Woolley to Johnson was in order to ascertain whether and at what period he should be paid commissions or compensation for his services; that this period, according to the agreement, was after Woolley had received back an amount of money equal to the amount paid by him to Johnson with interest; that, therefore, all of the moneys paid by Johnson to Woolley should be applied to the payment of the amount paid by Woolley to Johnson until such payments should equal the payments to Johnson by Woolley, and that thereafter all payments made by Johnson to Woolley should be applied to the payment of the interest accrued on the payments by Woolley to Johnson until said interest was extinguished; that by this method of application of payments the plaintiffs' testator and the plaintiffs together have received from Johnson an amount of money which is equal to the sum total of the amounts paid by Woolley to Johnson with interest at the rate of six per centum per annum and $880.53 in addition; that Johnson is, therefore, now entitled to receive as commissions or compensation for his services a sum equal to one-third of the amount which the plaintiffs are entitled to receive from him pursuant to the terms of said agreement; that he now has on hand a sum of money sufficient to pay and satisfy the commissions or compensation to which he is thus entitled and then pay to the plaintiffs a balance to which they are entitled amounting to $441.48.

If the plaintiffs' method of computing the interest is correct, the defendant owes them from the amount now in his hands the sum of $3,937.50, and if the defendant's contention is correct, he is entitled to retain the sum of $2,625 out of the sums due the plaintiffs, as set forth in the agreed statement of fact, and should pay over the sum of $441.48 to the plaintiffs.

The rights of the parties must be determined according to the terms of the written instrument defining their rights. By that agreement, as hereinbefore quoted, Woolley was to receive back the amount paid by him to Johnson " with interest." Johnson's

commissions and compensation were to be computed only upon the amount received by Woolley with interest. There is, therefore, no doubt whatever that the parties agreed that Woolley should receive interest on his payments to Johnson. Under such circumstances, the plaintiffs are correct in their contention that the rule for casting interest usually applied must be followed. That rule was laid down in *French* v. *Kennedy* (7 Barb. 455) as follows: " In the case of partial payments the rule was laid down in the case of *Connecticut* v. *Jackson* (1 John. Ch. Rep. 17) in these words: ' The rule for casting interest when partial payments have been made is to apply the payment in the first place to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal; but interest continues on the former principal until the period when the payments, taken together, exceed the interest due; and then the surplus is to be applied towards discharging the principal; and interest is to be computed on the balance of principal as aforesaid.' The like rule is laid down in nearly the same words by the judges of the Supreme Court as a direction to their clerks in the computation of interest. [See *Williams* v. *Houghtaling*, 3 Cowen, 87, note a.] The same rule prevails in Massachusetts. [*Edes and Al.*, *Admrs.* v. *Goodridge*, 4 Mass. 103; *Dean* v. *Williams*, 17 id. 417; *Fay, Judge, etc.*, v. *Bradley*, 1 Pick. 194.] "

In *Matter of Erving* (103 App. Div. 500) the court said (at p. 503): " This leads to a consideration of the only other question involved on the appeal, and that is, the method which should be adopted in calculating the interest, and upon this it does not seem as if there could be any serious doubt. The rule to be applied was settled nearly a hundred years ago, in *Connecticut* v. *Jackson* (1 Johns. Ch. 17). It was stated as follows: ' The rule for casting interest, when partial payments have been made, is to apply the payment in the first place to the discharge of the interest then due. If the payment exceeds the interest the surplus goes towards discharging the principal and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal, but interest continues on the former principal until the period when the payments taken together exceed the interest due and then the surplus is to be applied towards discharging the principal, and interest is to be computed on the balance as aforesaid.' It has since been followed."

In *Peyser* v. *Myers* (135 N. Y. 599, 607) the court said: " The interest was computed on the principal to such time as the payments equalled or exceeded the interest, and then a new principal was ascertained. · The method of computation adopted has been long recognized in this State as legal, and we perceive no reason for disregarding it in the present case."

The intention of the parties was that Johnson should receive no compensation until Woolley had received the full benefit of his agreement, and had been fully reimbursed for the amounts advanced by him with interest. It must necessarily be considered the same as if Woolley was receiving partial repayments of a sum advanced by him and, in the absence of anything in the agreement to the contrary, he would be entitled to apply them in any way he saw fit, and in order not to lose any interest, would naturally adopt the legal method of computing interest on partial payments. The agreement, moreover, does not require the interest to be computed semi-annually, quarterly, or any other way, so that this method of casting of interest seems to be not only the legal method, but also the only fair one in making this computation. There is no question of interest being computed on interest under this method, as it is always computed on the unpaid principal. It is difficult to see, if this method is the legal method for the computation of interest on a legacy under a will which has been paid in installments, why it is not also the proper method to be adopted in this computation for the purpose of fixing the compensation of the defendant under this agreement.

Judgment should, therefore, be granted in favor of the plaintiffs against the defendant in the sum of $3,937.50.

CLARKE, P. J., SMITH, McAVOY and MARTIN, JJ., concur.

Judgment directed in favor of the plaintiffs against the defendant in the sum of $3,937.50. Settle order on notice.